**In re J.S. & S.S., Juveniles**

[719 A.2d 865]

No. 97-201

June 17, 1998. Father and mother appeal the family court's order terminating their parental rights with respect to their son, J.S. We affirm.

Father and mother were married in February 1989. Their marriage was fraught with domestic violence from the beginning. Father was convicted of domestic assault on three occasions in 1994 and 1995. In 1995, he was also convicted of violating a relief-from-abuse order and violating pretrial conditions of release.

Father and mother's daughter, S.S., was born in October 1989, and their son, J.S., was born in September 1992. By the fall of 1994, the Department of Social and Rehabilitation Services (SRS) began receiving reports of suspected child abuse and neglect involving S.S. and J.S. The Department referred the family to the New Horizons Program, an intensive home-based parent education program. Shortly thereafter, a New Horizons caseworker observed bruises around S.S.'s eyes, which led to the filing of a CHINS petition. Both children were taken into SRS custody in February 1995. Following a merits hearing, and based on the admissions of the parties, in April 1995 the family court found that both children had been neglected and abused and were in need of care and supervision (CHINS). In May 1995, SRS filed a disposition report outlining a plan of services aimed at reunification. After mother withdrew her admissions at the disposition hearing, a second merits hearing was held in September 1995, and the court found the children to be CHINS based on mother's admissions to neglect and her no-contest plea to abuse. In November 1995, at a second disposition hearing, the court transferred custody to SRS and approved the updated case plan, which set forth the

same goal and plan of services as contained in the original case plan.

SRS changed the case plan goal from reunification to termination in February 1996 at the twelve-month administrative review. The change was made based upon the parents' minimal participation and progress with respect to the required services, and the children's need for stability and permanence. The Department filed for termination of parental rights in July 1996, and hearings were held in March and April 1997.

Following the hearings, the family court adopted the State's detailed findings regarding (1) the abuse the children had suffered; (2) the parents' minimal progress in achieving the goals set forth in the plan of services; (3) the problems with visitation; and (4) the children's fragile condition and special needs. The court found that the two young children had been in foster care for over two years, and yet the parents had still not made significant progress toward achieving the level of stability and parenting skills needed to provide for the children's special needs. The court further found that the parents had not taken responsibility for the prior abuse, were still in denial regarding much of the abuse, and did not have a stable living situation suitable for the children. Based on these and other findings, the court concluded that there was a substantial change in circumstances, and that the children's best interests required termination of parental rights.

On appeal, father argues that (1) the State failed to prove by clear and convincing evidence that a substantial change in circumstances had occurred and that termination of his parental rights was in the best interests of J.S., and (2) the trial court failed to exercise its discretion by adopting the State's proposed findings and conclusions before he had filed his own proposed findings and conclusions. Mother joins in these arguments and also argues that (1) the court's finding of

stagnation is unsupported in light of SRS's failure to make reasonable efforts to provide parent-education services, and (2) the termination order is an abuse of discretion because the effect of termination on J.S.'s best interests is speculative at best.

Regarding the finding of changed circumstances, we conclude that the record supports the court's determination that the parents' minimal progress in achieving the goals set forth in the plan of services constituted stagnation. The parents' situation need not regress for stagnation to occur. Changed circumstances occur when any improvement in parenting skills fails to conform to the expectations and goals set forth in the case plan. See *In re D.B.*, 161 Vt. 217, 220, 635 A.2d 1207, 1210 (1993). Here, notwithstanding father's claims to the contrary, clear and convincing evidence in the record supports the court's findings that father had failed to meet case plan goals and had made, at best, minimal progress toward achieving reunification. Father and mother completed an active parenting class that met once a week for six weeks. They also participated in, but did not complete, a nutrition program. Father failed to attend domestic abuse counseling until he was required to do so as a condition of being paroled. He did not participate in anger-management classes. He completed a drug and alcohol evaluation, but did not follow through with the resulting recommendations. Neither parent followed through with individual psychological counseling. In short, father's claim of substantial compliance with case plan services is an exaggeration.

Nor do we agree with mother's assertion that the stagnation was caused by factors beyond the parents' control. Mother points to a parent-education service that was cut off when the parents failed to show up for a session during a four-week trial period. She asserts that because she was unexpectedly arrested

on an outstanding warrant while she and father were hitchhiking to the session, their failure to appear at the session was beyond their control. This argument is unavailing. Because of the parents' history of not following through with recommended services, and because other families were on a waiting list for the parent educator's services, the parents were forewarned that their absence from any of the sessions during the trial period would terminate their participation in the program. Further, assuming that the parents' failure to show could be characterized as being beyond their control, stagnation in this case resulted from the parents' deficiencies and failure to follow through with services in a number of areas besides parent education.

The record also supports by clear and convincing evidence that termination of parental rights was in J.S.'s best interests. The psychologist who performed a forensic family evaluation in the fall of 1996, nearly two years after the children had been taken from the parents and a full year after the second disposition hearing, testified that (1) the parents' psychological and parenting deficiencies, both individually and as a couple, were severe and long-standing; (2) neither parent had done much in the past two years to address those deficiencies; (3) both parents continued to minimize the past violence between themselves and their abuse of the children, which posed a future risk to the children should the family be reunited; and (4) the seriously troubled children were not in a position to wait any longer for the parents to make the changes necessary to allow them to provide for their children's extraordinary needs. Based on this testimony and other evidence, the court determined that termination of parental rights was plainly warranted, particularly given the children's tender age and exceptional needs, and the parents' continued failure to effect meaningful changes in their lives and to demonstrate insight into the extent and effect of their abusive behavior. See *In re B.M.*, 165 Vt. 194, 199, 679 A.2d 891, 895 (1996) (polestar in disposition proceedings is best interests of children, with most important factor being likelihood that parents will be able to resume parental duties within reasonable time).

We find no merit to father's argument that the court improperly focused on the past and not the future. Clear and convincing evidence supported the court's findings and conclusions that in the two years that S.S. and J.S. had been in SRS custody the parents had made little progress in achieving the skills necessary to parent the children or even coming to grips with the reasons why the children had been taken from them. As the court found and the evidence amply demonstrated, a reasonable time for reunification had already passed, considering the age of the children, the length of time that they had been separated from their parents, and their need for stability and permanence. Even assuming that a reasonable time had not passed at that point, the evidence indicated little hope that in the near future the parents would overcome their deeply-ingrained and long-standing problems and develop the skills necessary to parent a severely emotionally disturbed child such as J.S. The court's findings detailing the parents' almost complete lack of effort to avail themselves of case plan services before February 1996 appropriately demonstrated that the parents delayed too long before making limited progress toward complying with the case plan. In any event, the court also found that even up until the time of the termination hearing the parents continued to deny and minimize the abuse that had traumatized their children, and thus would be unable to resume parental duties in the near future.

Mother argues that because J.S. had been placed in a number of foster homes and expert testimony indicated that the

child's tantrums following visits with his parents could have resulted from his feelings of loss and sadness at leaving persons with whom he remained bonded, the court's determination that termination was in the child's best interest was speculative. We disagree. In the spring of 1997, between the two termination hearings, a psychiatrist examined J.S. at the request of SRS for the purpose of determining the cause of the child's tantrums and recommending what could be done about it. In her report, she wrote that J.S. was suffering from post traumatic stress disorder, and recommended that parental visits be stopped, given that his outbursts tended to coincide with parental visits. When asked during cross-examination at the termination hearing whether the outbursts could have been caused by the fact that parental visits were ending rather than occurring, the psychiatrist, who had never met the parents, stated that that was possible. We do not doubt mother's contention that no one can be certain of the reason behind the child's outbursts. Certainly, mother's hypothesis is at best speculative. But whatever the reason for the outbursts, clear and convincing evidence demonstrated that termination was in J.S.'s best interests.

Finally, father complains that the court failed to exercise its discretion by adopting the State's proposed findings and conclusions verbatim before he filed his own findings and conclusions. We disagree. At the end of the April 7, 1997 termination hearing, the state's attorney informed the court that the State would file its proposed findings by two weeks from the coming Friday, which would have been April 25. Father's attorney requested an additional seven days after the state's attorney filed its findings. The court stated, "So by May 2nd." Father's attorney responded, "By May 2d." The State filed its proposed findings on May 1.

On May 9, the court issued its termination order. Three days later, on May 12, father's attorney filed his proposed findings. The court did not act improperly in issuing its decision before receiving father's proposed findings. As demonstrated by the colloquy at the end of the termination hearing, the court gave the parties a common deadline of May 2 to file their proposed findings, and father did not meet that deadline.

Nor do we find support for father's assertion that the court's wholesale adoption of the State's findings resulted in numerous erroneous findings and demonstrated the court's failure to carefully examine the evidence. "Findings of fact shall not be set aside unless clearly erroneous, notwithstanding the verbatim adoption by the court of a party's proposed findings." V.R.C.P. 52(a)(2); V.R.F.P. 2(a) (Rule 52 is among civil rules applicable in termination proceedings). Here, the court did not adopt the State's proposed findings verbatim, but rather made numerous, if minor, changes that reflected the court's interpretation of the evidence. Further, none of the examples of findings cited by father are clearly erroneous or indicate that the court failed to review the evidence in the case.

Nevertheless, we are troubled by the court's near verbatim adoption of the State's proposed conclusions of law. Conclusions of law reflect the court's considered application of the law to the facts of a particular case. When the court merely repeats the conclusions offered by one of the parties, confidence in the court's independent judgment is diminished. Accordingly, the better approach in contested termination cases is for the family court not to rely on proposed conclusions in explaining its decision. Here, however, we find no basis for overturning the termination order.

*Affirmed.*