*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2011-281

NOVEMBER TERM, 2011

| | |
|---|---|
| In re A.R. and A.R., Juveniles | } APPEALED FROM: |
| | } |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 400/401-10-08 Cnjv |

Trial Judge: Edward C. Cashman

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to her twin sons, A.R. and A.R. On appeal, mother argues that (1) the evidence does not support the court's findings relating to mother's ability to resume parenting within a reasonable period of time; (2) the court's findings regarding mother's emotional instability are not supported by the evidence; and (3) the court's conclusion that the children require immediate stability is not supported by the evidence. We affirm.

The court found the following facts. Mother's twin boys were born in August 2008. Mother had moved to Vermont a few months prior to the children's birth to escape their abusive father. The children were born prematurely and spent two weeks in the hospital before going home with mother.

The twins first came into the custody of the Department for Children and Families (DCF) in October 2008 after the court issued an emergency detention order over concerns about mother's mental health. This order came about after mother brought the children to their pediatrician because one child had a high fever. The pediatrician was concerned about sepsis and sent mother to the emergency room. During the following exam and treatment in the hospital, mother was upset and claimed that the medical staff were experimenting on her child. She was hysterical to the point that hospital staff contacted DCF. A subsequent x-ray examination of the child showed a bone fracture in one child that predated the hospital visit. The mother offered no explanation for the injury beyond blaming the treating physician in the emergency room. Shortly thereafter, the State charged mother with aggravated assault. While mother was incarcerated she had weekly visits with the children. Eventually, she pleaded nolo contendere to a reduced charge of simple assault and was released in June 2010.

The court held a four-day merits hearing in August 2010 to determine if the boys were children in need of care or supervision (CHINS). The State presented expert testimony from three doctors to support its contention that one child had a fracture in his leg that was caused by a non-accidental injury. A doctor also testified as an expert on mother's behalf and opined that she could not determine within a reasonable degree of medical certainty that there was a fracture in the child's leg. On September 29, 2010, the court found by a preponderance of the evidence that

the boys were CHINS due to mother's neglect. The court found that mother was responsible for the leg fracture inflicted on one child. Immediately after the CHINS determination, DCF filed a case plan and sought to terminate parental rights.

The twins are mother's fifth and sixth children, and all prior children came into state custody at birth. Mother was incarcerated at the time the first child was born and the other three tested positive for crack cocaine at the time of birth. Although there was no evidence mother was using drugs, the January 2009 case plan encouraged mother to complete a substance abuse assessment and a full psychological evaluation. DCF also arranged individual counseling through Easter Seals and encouraged mother to obtain appropriate housing. Easter Seals provided coaching support to mother beginning in July 2010. The coaching ended in December 2010 because of mother's lack of engagement. DCF hired an expert to evaluate the interaction and attachment of the twins with mother and the foster parents. The expert, however, could not complete her report because mother missed appointments and failed to reschedule meetings.

The children were placed in foster care in October 2008 and have remained in the same placement since then. They have a positive relationship with their foster parents and older foster sister. The foster parents provide appropriate medical care and daily supervision and a strong nurturing environment. Mother was hostile and disrespectful to the foster parents at transition events during visits. The children displayed stress following visits, including waking from nightmares and displaying aggressive and disruptive behavior. Mother began missing visits with the children in January 2011 and last saw them February 23, 2011. Thereafter, she moved to New York City without notice to DCF. The children's hostile and aggressive behavior ceased after the visits stopped.

At the termination hearing, the State presented testimony from the DCF social worker, the expert hired to do the psychological and attachment evaluation, and one of the children's foster parents. Mother testified on her own behalf. In a written order, the court found by clear and convincing evidence that mother would not be able to resume parenting within a reasonable period of time, had no relationship with the children and that the children had a strong bond with their foster parents and a disruption would cause substantial hardship. Thus, the court concluded that termination was in the children's best interests. Mother appeals.

The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the children's best interests. In re J.T., 166 Vt. 173, 177 (1997). In assessing the children's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless they are clearly erroneous. Id.

Mother first argues that the court erroneously concluded that she would not be able to resume parenting within a reasonable period of time because the requisite findings were not supported by the evidence. Mother cites five particular findings as lacking in evidentiary support: (1) that mother did not understand the medical needs of the children; (2) that mother was abusive towards medical personnel; (3) that mother was unable to provide a reasonable rationale for her son's leg injury; (4) that mother refused to work with Easter Seals personnel; and (5) that mother abandoned her children. Mother contends that these findings were critical to the court's decision that mother would not be able to resume parenting within a reasonable period of time and therefore amount to reversible error.

We agree that the court erred in incorporating findings from the CHINS merits' hearing insofar as those findings were made by a preponderance-of-the-evidence, rather than a clear-and-convincing-evidence, standard. See In re J.R., 164 Vt. 267, 270-71 (1995) (explaining that because termination proceeding requires higher burden of proof, CHINS findings may not simply be incorporated into termination decision). Thus, given that no medical testimony was presented at the termination hearing regarding the emergency room visit, the leg injury, and mother's conduct at that time, the court lacked evidence to determine by clear and convincing evidence that mother was abusive to medical staff in October 2008, lacked an understanding of the children's medical needs and failed to provide a reasonable explanation for the leg injury to her child.

The court's unsupported findings, however, were not critical to its determination that mother would not be able to resume parenting within a reasonable period of time. "[W]here a finding of fact that supports the conclusion of the court is clearly erroneous, we find harmless error if other valid findings also support the court's conclusion." In re G.F., 2007 VT 11, ¶ 15, 181 Vt. 593 (mem.). The court's finding that mother refused to work with the Easter Seals personnel is supported by the testimony of the DCF social worker, who explained that the coaching was terminated because mother would not accept feedback and mother's angry attitude caused the educator to fear for her safety. Similarly, the court's determination that mother abandoned her children in February 2011 is supported by the evidence that she terminated visitation and left the state without communicating with DCF or her attorney. These facts, coupled with the court's other findings, including that mother failed to cooperate with and complete the substance abuse and attachment evaluations and currently has no relationship with the children, are sufficient to support the court's conclusion that mother will not be able to resume parenting within a reasonable period of time.

Mother's contention that the court erred in giving mother's past history of drug abuse any weight is without merit. The treatment of siblings is relevant in a termination proceeding. In re K.B., 154 Vt. 647, 647 (1990) (mem.). Here, the court considered mother's history of drug abuse and her resulting inability to care for her older children in finding that DCF's request for a substance abuse assessment and a psychological evaluation was reasonable. Thus, the court did not conclude that mother's past struggles with substance abuse necessarily prevented her from caring for the children, but that this concern was not alleviated because mother failed to cooperate with the required assessments and evaluations.

Next, mother argues that there is no evidence to support the court's finding that she is emotionally unstable and unable to cope with the demands of life. In particular, mother contends that the court impermissibly considered mother's courtroom behavior, including her outbursts, to find that she is impulsive and has a disruptive demeanor. There was no error. Even ignoring the court's observations of mother's demeanor at trial, there was sufficient other evidence to support the court's findings that mother is confrontational and impulsive and lacks the skills to provide a stable home for her sons. This evidence includes mother's dismissal of the Easter Seals educator, mother's unexplained missed visits with the children, mother's failure to cooperate with the expert on the attachment evaluation, mother's abrupt departure from the state without notice and mother's refusal to participate in a substance abuse screening or psychological assessment.

Mother also contends that there was no evidence in the record to support the court's statement that "[m]uch is written and understood regarding the shaping of a child's emotional and intellectual development in the first few years of life," and therefore the twins had an urgent need for stability. There was no error. A "reasonable period of time" must be evaluated from

3

the perspective of the child's needs. See In re B.M., 165 Vt. 331, 337 (1996). Here, the State's expert testified concerning a young child's need for healthy attachment to a caregiver to provide a sense of security and sense of self. Further, as we have elsewhere observed, in evaluating the welfare of a child a court may "draw upon its own common sense and experience in reaching a reasoned judgment." Payrits v. Payrits, 171 Vt. 50, 53 (2000). Thus, court's observation that these children had an imminent need for permanency because of their young age and extended time in foster care was not error in that the children's age and their length of time in DCF custody are critical factors in determining a reasonable period of time from the perspective of the child. See In re J.S., 168 Vt. 572, 574 (1998) (evaluating trial court's determination of reasonable period of time based on "age of the children, the length of time that they had been separated from their parents, and their need for stability and permanence").

Mother's next argument is that the court erred in determining that mother failed to follow through on recommendations to seek a substance abuse assessment and counseling because mother testified that she had completed a substance abuse evaluation and done some counseling. Given that mother's testimony on this point was vague and mother did not provide DCF with the requested releases to allow DCF to speak with mother's providers, the court did not err in giving no weight to mother's testimony on this point. See In re A.F., 160 Vt. 175, 178 (1993) (reciting that family court has discretion to determine credibility of witnesses and weigh evidence).

Finally, mother contends that the trial court withheld its discretion by failing to carefully consider the facts of this case. According to mother, the court displayed a "lack of adequate caution" in assessing the facts and this is displayed by what mother describes as the court pasting language in its decision that appears to relate to a different case involving one female child. Even assuming that this particular sentence was copied from a different decision, we find no error. The sentence merely recites one of the statutory best-interests factors. Following that recitation of the law, the court then sets forth its particular findings on this factor as related to the case. The court's analysis reflects a thorough consideration of the evidence in this case.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Brian L. Burgess, Associate Justice

4