*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-064

NOVEMBER TERM, 2012

| | |
|---|---|
| In re H.F., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Grand Isle Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 5-7-10 Gijv |
| | |
| | Trial Judge: Martin A. Maley |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to their daughter H.F., born in November 2008. On appeal, mother argues that the court erred in adopting findings made by the merits court and in concluding that mother would not be able to resume parenting within a reasonable period of time. Father argues that the court's findings concerning the quality of his relationship with H.F. are not supported by the record. We affirm.

Mother became pregnant with H.F. when she was sixteen and father was seventeen. Parents married before H.F.'s birth. Parents lived in the paternal grandparents' home at the time. They both had substance-abuse and mental-health issues. H.F. was born addicted to opiates and went through significant withdrawal. Due to parents' addiction, after H.F.'s birth, the Department for Children and Families (DCF) created various safety plans and offered parents services so H.F. could remain with her parents. The plans included requirements for parents to participate in mental-health and substance-abuse counseling. Unfortunately, the various plans were unsuccessful. Both parents failed to maintain minimal contact with DCF or to follow through on treatment. They were both arrested and spent time in jail for offenses related to their drug use. H.F. was in the car at the time mother and father attempted to gain illegal entrance to a house. Father was also convicted of domestic assault against mother in 2010.

In July 2010, the court ordered that custody of H.F. be granted to DCF. DCF placed H.F. with her paternal great aunt and commenced proceedings to have H.F. adjudicated a child in need of care or supervision (CHINS). Following a contested hearing held over three days, the court found H.F. was CHINS.

From July 2010 to January 2011 mother's whereabouts were unknown. Mother was on probation, but failed to keep appointments with her probation officer or to attend work crew. In January 2011, mother was arrested while with father for violating her probation. Drugs, needles, and drug paraphernalia were found in father's car following mother's arrest. Mother served 26 days in jail. Mother was pregnant at the time and was given the opportunity of going to the Lund Family Center instead of serving the rest of her sentence. She entered Lund at the end of January

2011. Around that time, mother was prescribed an opioid replacement drug, suboxone, to manage her addiction. She gave birth to her second child in March 2011 while there, and that baby was also addicted to opiates at birth due to mother's use of suboxone. In February 2011, a search found a syringe, cash and a pill in mother's room. In May 2011, another room search discovered over-the-counter medicines, unidentified pills, a syringe cap, an identification card from a hospital employee, and small candles. Her drug screenings at the Lund Home were clean, except for her prescribed suboxone.

Mother was inconsistent in attending programming at Lund and left at the beginning of August 2011 against the advice of DCF, the Department of Corrections, and Lund, without successfully completing the programming goals. After leaving Lund, mother was scheduled to have visits there with H.F. three times a week with two parent education sessions. Mother made the majority of scheduled visits in August, but she did not attend numerous parent education classes in August. After September 2, 2011, mother stopped coming to visits with H.F., and did not provide an explanation to DCF or Lund.

Following father's conviction for domestic assault, he failed to comply with his probation conditions. Father continued to use drugs until he entered a residential treatment facility in February 2011. Upon his release, he was referred for intensive outpatient treatment, but did not participate in that program. He violated his probation in May and went to jail for a short time. He began individual counseling in May 2011, but his attendance has been inconsistent. He has not addressed the domestic violence against mother or completed a parent education class. At the final hearing, he claimed to be drug-free except for a relapse in June 2011.

DCF sought termination of parental rights in May 2011 at the initial disposition stage. At the end of October and beginning of November, the court held a three-day hearing. In January 2012, the court issued a written order. In assessing the best-interests factors, the court found mother continued to have barriers to safe parenting. Substance abuse remained a concern in light of mother's long history and the material found in her room at Lund. Further, the court found mother needed mental-health treatment. The court found that mother had not recognized the impact of her substance abuse on her children and was unable to identify unsafe people or situations. The court found that both parents were inconsistent in visiting H.F. and this has negatively impacted her relationship with them. Father was in supervised community release at the time of the hearing, and the court found that he would not be able to provide a stable home for H.F. H.F. is bonded to her kinship foster mother, who is meeting her needs and wishes to adopt her. The court concluded that H.F. required immediate permanency and parents would not able to provide a safe and stable place to live in the reasonably foreseeable future. Thus, the court concluded that termination was in the child's best interests. Both parents appeal.

The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). The reasonableness of the time period must be measured from the child's perspective, In re B.M., 165 Vt. 331, 337 (1996), and may take account of the child's young age or special needs, In re J.S., 168 Vt. 572, 574 (1998) (mem.). On appeal, we will uphold the

family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

We first address mother's appeal. Mother argues that the court erred in adopting findings from the CHINS order where those findings were not made using a clear-and-convincing-evidence standard. It is well-established that while CHINS findings may be made using a preponderance-of-the-evidence standard, at termination, the court must make findings using a clear-and-convincing-evidence standard. In re J.R., 164 Vt. 267, 270 (1995). Consequently, CHINS findings may not be simply adopted at termination where the higher standard of proof was not satisfied. Id. at 271. Here, it was unclear what standard of proof the CHINS court applied. Thus, the State provided all of the testimony presented at CHINS to the court at the termination-of-parental-rights hearing, and asked the court to make its own findings. Based on this evidence, the court at termination made several findings by clear-and-convincing evidence. Neither parent objected to this process at trial, and they waived this issue for appeal. See In re R.L., 148 Vt. 223, 226 (1987).

In any event, mother can point to no prejudice that resulted to her from the process. She does not point to any relevant finding made at termination that rested solely on the CHINS evidence. The main findings the court made based on the CHINS evidence was that prior to DCF taking custody of H.F. parents had not complied with the various safety plans DCF had developed and that father continued to use drugs as of July 2010. These findings were also supported by other evidence in the record at termination. Father's probation officer testified that father tested positive for cocaine and buprenorphine in July 2010, and admitted that he was using buprenorphine daily in November 2010 without a prescription. Father testified that he continued his use until he entered Maple Leaf in February 2011. In addition, a DCF caseworker testified concerning the safety plans that were put in place following H.F.'s birth and parents' failure to abide by the terms of those plans.

Mother next argues that the court's conclusion that she will not be able to resume parenting within a reasonable period of time is erroneous. Mother contends that the court erroneously focused on H.F.'s need for permanency rather than mother's present and prospective ability to parent H.F., and made insufficient findings regarding mother's fitness and readiness to parent.

In assessing whether a parent will be able to resume parental duties within a reasonable period of time, the court must consider the parent's "prospective ability to parent the child," but this does not mean "that past events are not relevant to whether the parent can resume parental duties." In re B.M., 165 Vt. at 337. The focus of the termination hearing is on "the future of the parent-child relationship," id. at 337-38, but a child's need for a stable home is certainly relevant to the best-interests analysis. In re M.B., 162 Vt. 229, 238 (1994).

There is no merit to mother's argument that the court erred in concluding that a reasonable time had already passed rather than determining what further time frame was reasonable. The court did not impermissibly conclude that a reasonable period of time ended years before the termination hearing. Cf. In re B.M., 165 Vt. at 337. The court carefully considered the evidence of mother's progress and H.F.'s current and prospective needs. Based on the evidence, the court found that H.F. "needs consistency, care, and to be loved," and that

3

H.F.'s permanency "cannot be postponed any longer." This was not a determination that the time for permanency ended long ago, but that H.F.'s need for permanency was immediate. This type of finding is wholly proper. See In re J.S., 168 Vt. at 574 (concluding reasonable time had already passed from child's perspective); accord In re M.M., 159 Vt. 517, 523-24 (1993). The court then concluded that mother was not immediately ready to parent H.F.

Mother argues that certain of the court's findings are erroneous and insufficient to support a conclusion that she could not currently or prospectively parent H.F. Mother contends that there was insufficient evidence to demonstrate that: mother's inconsistent contact with H.F. was detrimental to her relationship with H.F.; mother lacked stable housing; mother had unaddressed mental health problems that created a barrier to her parenting; and mother had not fully dealt with her substance-abuse issues.

Each finding is supported by sufficient evidence. See In re A.F., 160 Vt. at 178 (findings will be affirmed unless clearly erroneous). As to mother's inconsistent visitation with H.F., the evidence demonstrated that mother was absent for a long period of H.F.'s young life, attending just three visits between July 2010 and January 2011, and thereafter inconsistently attending visitation. The court found that this impacted parents' relationship with H.F. This finding is supported by the testimony of H.F.'s foster mother that H.F. was disappointed when visits did not occur, and the testimony of the visit supervisor that H.F. did not display attachment to mother. In addition, mother's DCF caseworker testified that there was a bond between mother and H.F., but that it had been impacted by periods of time where there was no contact. Therefore, the court's finding was not in error.

The evidence also supports the court's finding that mother lacked stable housing. She had had various living arrangements since H.F. was taken into custody. Her DCF caseworker testified that other than Lund, mother had at no time had safe, stable, and substance-free housing. At the time of the final hearing, mother was living with a friend and had been there for one month. Prior to that she had resided in several different places, including hotels. Although mother testified at the final hearing that she was looking for stable housing, she explained that she had not yet found something. Based on this evidence, it was not error for the court to conclude that mother lacked stable housing.

In addition, there was evidence to demonstrate that mother had unresolved mental-health and substance-abuse issues. Mother's clinician at Lund, a licensed clinical social worker, testified that mother was evaluated and diagnosed with opioid dependence and a depressive disorder, not otherwise specified, given her flat effect and lack of emotion. She testified that mother needed outpatient counseling to address her opioid addiction and mental health issues and recommended that mother engage in a neuropsychiatric assessment. Another Lund employee testified that mother seemed depressed and would forget her baby's medical appointments and sessions with her clinician, case manager or family educator. Mother's family educator testified that while mother had at times in a structured supervised setting displayed nurturing interactions with her children, this was not consistent and mother was at times disengaged with a flat effect. She also testified that she had concerns about mother's depression. Mother did not successfully complete the program at Lund, and was discharged for lack of progress and lack of insight. While mother cites other evidence she claims demonstrates that mother's depression diagnosis was inconclusive and she did not have any mental health issues,

4

there was sufficient evidence to show that mother's depression existed and hindered her ability to parent.

As to substance abuse, mother has made progress in addressing her addiction and that is commendable. Notwithstanding this progress, there was evidence to support the court's finding that mother's addiction had not been fully dealt with and mother needs further ongoing treatment for substance abuse. Mother has a serious addiction. She started using illegal drugs at fourteen, and for a time around H.F.'s birth was daily injecting herself with oxycontin. During her time at Lund, mother had clean urine screens, but two room searches found unidentified pills, syringe caps, small candles and a hospital employee identification card. Mother's clinician testified that the items found in mother's room were a concern because they indicated mother was not abiding by the program policies and possible substance abuse. Mother was on suboxone and the clinician testified that the urine screens cannot determine if the person is using more of the drug than what is prescribed. Further, mother did not recognize the impact of her substance abuse on her life. Given mother's long history of substance abuse, the items found in her room, her failure to understand the impact of her addiction on her and her children, and that she left Lund without completing the program, it was reasonable for the court to conclude that mother's addiction remained an obstacle to parenting.

Finally, we reject mother's argument that the court was required to make an explicit finding of her unfitness at the termination proceeding. At termination, the statute directs that the court consider the child's best interests as related to four statutory factors. 33 V.S.A. § 5114(a). Parental fitness is not specifically designated in the statutory factors, but is indirectly encompassed in the court's determination, including in evaluating whether the parent will be able to resume parenting in reasonable period of time. Id. § 5114(a)(3). Here, the findings implicitly demonstrate that mother was not fit to parent H.F. at the time of termination. The findings show that after years of services mother lacks stable housing, requires further mental-health and substance-abuse treatment, lacks insight into how her substance abuse has harmed her child, and may place her children at risk due to her inability to identify safe people or situations.

Next, we turn to father's argument that the court misapprehended the evidence about the quality of his parenting and his relationship with H.F. Father claims that the testimony shows he was an attentive and caring parent and that he and H.F. shared a loving bond. Therefore, he claims the court erred in concluding that father would not be able to parent because of a reluctance to discipline H.F. and because inconsistent visitation diminished their relationship. Father points to the visit supervisor's testimony that during visits father played with H.F., kept her safe and was open to feedback.

Despite these positive attributes of father's relationship with H.F., there was evidence to support the court's conclusion that father had not demonstrated he would be able to parent H.F. in a reasonable period of time, and that father's inconsistent contact harmed his relationship with H.F. Between July 2010 and January 2011 father visited H.F. only four times. Between March 2011 and the TPR hearings at the beginning of November, father attended 20 visits with H.F. out of 32, which could have been 64 if he had availed himself of the opportunity for a second visit per week. The court found that the inconsistency in father's visits "has taken an ongoing toll" on his relationship with H.F. This finding is supported by testimony that when father misses visits

5

H.F. is disappointed and confused, and that H.F. has emotional breakdowns at school following visits with father.

Further, the court recognized father's limited success in parenting H.F. during visits, but did not err in concluding that despite this success father was not currently able to parent H.F., who required immediate permanence and stability. Father's success was in a supervised and structured setting with the support of coaches. Father had been unable to progress beyond supervised and coached visits even after years of services. Further, father lacks safe and stable housing. He continues to reside with his parents, but H.F. cannot be placed there due to her grandfather's substantiation for sexual abuse. These findings support the court's conclusion that father will not be able to resume parenting within a reasonable period of time.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Brian L. Burgess, Associate Justice

6