*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-340

DECEMBER TERM, 2013

| | |
|---|---|
| In re J.T. and E.T., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Windsor Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 51-5-09/73-7-11 Wrjv |

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's order terminating his parental rights with respect to his two children, J.T. and E.T. We affirm.

J.T. and E.T. were born in March 2008 and July 2009, respectively. In May 2009, the Department for Children and Families (DCF) filed a petition alleging that one-year-old J.T. was a child in need of care or supervision (CHINS) based on the neglect of the parents, who were living with father's parents. Based on the petition, the court issued a conditional custody order that kept J.T. with her parents but required them to cooperate with DCF, to participate in parent education and mental health services, and to refrain from engaging in violence towards each other or using corporal punishment against the child. DCF provided a variety of support services to the parents, including referrals to other agencies. J.T. was adjudicated CHINS in June 2009 based on the parties' admissions. In August 2009, the court approved a disposition plan that continued custody with the parents subject to a number of conditions, including that they participate in parent education, secure appropriate and stable housing, obtain employment, engage in mental health services, refrain from domestic violence, and address J.T.'s medical needs.

At this time, father was on probation for his conviction on three counts of domestic assault against mother. In September 2009, the paternal grandmother asked father to leave her home after he smashed his father's windshield and threw a rod at his mother. Based on these incidents, he was arrested, charged with violating his probation, and jailed. He was convicted of felony aggravated domestic assault in April 2010 and sentenced to serve a term of seven months to four years. In the fall of 2009, mother moved out of the paternal grandparents' home and lived temporarily in her car with the children. Father was incarcerated at the time of the November 2009 post-disposition hearing. Eventually, he was furloughed into the community, and, by February 2011, he was engaged in counseling and cognitive self-change programs.

The children remained in the conditional custody of their parents until July 2011, when DCF filed a CHINS petition concerning two-year-old E.T. DCF also sought to amend the disposition order concerning J.T. based on the parent's continued neglect. The petition indicated that the parents had failed to follow through on medical and other services to address the

children's medical and developmental needs. The petition also stated that the parents had failed to follow through with services offered by a parent-child center, which had closed its case on the family. When the children were taken into custody, J.T. was hyperactive and insisted on eating on the floor, while E.T. displayed a flat affect and did not speak. A temporary order was issued placing the girls in DCF custody, where they have remained since.

In September 2011, the court adjudicated E.T. CHINS based on the parties' admissions. At the same time, the parents stipulated to a modification of the original disposition order for J.T. as well as a disposition order for E.T. The new disposition orders called for continued DCF custody with a goal of reunification. The case plan agreed to by father required him to: (1) participate in family time coaching; (2) participate in child development and parenting classes; (3) demonstrate that he understood and could meet the children's medical needs; (4) take the children to child care daily; (5) work with all recommended services providers and participate in treatment team meetings with DCF; (6) participate in all necessary services and inform DCF when he had a valid excuse for not attending required services; (7) sign releases when needed; (8) maintain a safe and appropriate home for young children; (9) refrain from smoking in the home; (10) engage in mental health treatment; (11) comply with probation or parole conditions; and (12) not be charged with any new criminal offenses.

In March 2012, at a meeting attended by the parents, a DCF social worker, and a family time coach, father engaged in aggressive and threatening conduct when the DCF worker expressed concern about him having missed eight of thirty-two visits with the children. As the result of his conduct, father's parole was revoked and he was incarcerated until he was released on furlough in January 2013.

Meanwhile, in July 2012, DCF filed a petition to terminate the parents' residual parental rights with respect to both children. The mother relinquished her parental rights on April 29, 2013, and an order to that effect was issued on May 9, 2013. On July 31, 2013, following two days of a contested hearing held earlier that month, the superior court terminated father's parental rights, concluding that there was a change of circumstances due to stagnation of his ability to care for the children, and that, considering the statutory factors, termination of father's parental rights was in the children's best interests. Father appeals, arguing that: (1) the superior court's finding of stagnation is clearly erroneous because it fails to credit him for his substantial efforts towards satisfying the case plan; and (2) the court's findings in support of its conclusion that father would not be able to resume his parental duties within a reasonable period of time are insufficient because they fail to address a timeframe for what is a reasonable period of time under the specific circumstances of this case.

In moving to modify a disposition order from a goal of reunification to termination, DCF had the burden to prove by clear and convincing evidence "that a change in circumstances require[d] such action to serve the best interests of the child[ren]." 33 V.S.A. § 5113(b). The threshold showing of changed circumstances is most often satisfied by demonstrating that "the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re R.W., 2011 VT 124, ¶ 14, 191 Vt. 108 (quotation omitted). "Stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted). Here, father argues that the superior court's findings ignore or discount his progress in addressing his anger issues and his ability to work with others since his release from jail in January 2013. In support of this argument, father notes, without citing to the record, that he and his mother testified that he had made changes since his incarceration in

2

March 2012, that he wanted to be a better person, that he had engaged in therapy, and that he had repaired his relationship with his parents.

We find no merit to this argument. The superior court noted the programs in which father had participated in 2010 and 2011, and further explicitly found that, at the time of the termination hearing, father was working with an individual therapist and was enrolled and actively participating in a community-based cognitive self-change program. The court also found, however, that overall, father had made no progress towards achieving several necessary case plan goals, including that he work with all recommended service providers and not miss appointments without a valid excuse, that he maintain a safe home appropriate for young children, that he sign releases allowing DCF to speak to his service providers, and that he comply with all probation or parole requirements and not be charged with new crimes. The court further noted that, several months after his release from jail, father was still living in housing that was entirely inappropriate for children and was not taking any steps to find alternative housing. Finally, the court cited the lengthy passage of time during which the young children were in foster care while father was making little or no progress toward reunification. In short, the court was aware of father's recent efforts to address some of the issues that led to his children being taken into state custody, but determined overall that changed circumstances had occurred due to his failure to make any significant progress toward the disposition goal of reunification. There is sufficient support in the record to support the court's finding of stagnation.

Next, father argues that the court's findings in support of its determination that father would be unable to resume his parental duties within a reasonable period of time are insufficient because they fail to specify a timeframe for when he could resume his parental duties. Again, we find no merit to this argument. As we have stated on numerous occasions, the most critical of the statutory best-interest factors is the likelihood that the parent will be able to resume parental duties within a reasonable period of time, In re D.C., 2012 VT 108, ¶ 28, 71 A.3d 1191, which is considered from the perspective of the children, In re B.M., 165 Vt. 331, 336 (1996). Here, the superior court noted that the parents were provided services for a period exceeding two years while the children were in their care under a conditional custody order. Yet, at the end of that time, their continued neglect of the children required DCF intervention and a court order removing the children from their custody. Then, as the court found, during an additional two-year period since July 2011, the children remained in foster care while father, despite the continued availability of services, failed to make any significant progress towards achieving case plan goals aimed at enabling him to reunite with his children. As the court noted, at the time of the termination hearing, father was living in housing inappropriate for the children and was subject to various furlough conditions as the result of his most recent incarceration.

When the children were brought into DCF custody, they struggled with emotional and developmental issues as the result of being neglected by their parents, exposed to domestic violence, and raised in squalor. Meanwhile, father was incarcerated for engaging in violent or threatening conduct, both after the conditional custody order was put in place and after the children were removed from their parents' custody. Four years after DCF became involved with the family and provided numerous services to enable father to resume his parental duties, he was still not ready to do so, as he acknowledged at the termination hearing. Moreover, as the superior court found, the girls had made tremendous progress in their physical, emotional, and mental development during their time with their foster family. As witnesses testified, the children were in need of stability and permanence, having spent a significant part of their lives in DCF custody. The trial court may take into account the age of the child and the length of time

3

that they have been in DCF in determining when a reasonable time for resuming parental duties has passed. See In re W.L., 2009 VT 41, ¶ 16, 185 Vt. 641 (mem.) (affirming termination of parental rights in part because "the need for stability and permanence was particularly pronounced given W.L.'s young age"); In re J.S., 168 Vt. 572, 574 (1998) (mem.) (upholding termination order based on parent's lack of progress and child's tender age and exceptional needs); see also Payrits v. Payrits, 171 Vt. 50, 53 (2000) (recognizing that, in determining children's best interests, "the court may draw upon its own common sense and experience in reaching a reasoned judgment"). The law does not require the trial court to establish a specific timeframe in which a parent must resume parental duties; nor is the court required to wait until further harm comes to the children before terminating parental rights.

We agree with father that the question of the likelihood of a parent resuming parental duties is forward-looking. In this case, however, there was overwhelming evidence to support the court's conclusion that father will not be able to resume his parental duties within a reasonable period of time, given the age of the children, the significant emotional and developmental issues that they have had to deal with due to their parents' neglect, the length of time that they have been in DCF custody, father's lack of progress toward reunification during that lengthy period, his continuing inability to care for the children, and the uncertainty of whether he will ever be able to care for them. We recognize that parents have a fundamental right to care for their children, but "[p]ublic policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child." B.M., 165 Vt. at 342 (quotation omitted).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

4