*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-364

JANUARY TERM, 2016

| | |
|---|---|
| In re K.M., E.M. and C.M., Juveniles | }     APPEALED FROM: |
| | } |
| | }     Superior Court, Franklin Unit, |
| | }     Family Division |
| | } |
| | }     DOCKET NO. 69/70/71-5-14  Frjv |

Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal from a superior court judgment terminating their parental rights to the minors E.M., K.M., and C.M.  Father contends the trial court improperly based its decision to terminate parental rights on factors beyond his control and gave undue weight to the children's attachment to their foster family.  Mother joins in father's arguments, and further contends that the evidence and findings fail to support the court's conclusion that the parents had not played a constructive role in the children's lives.  We affirm.

The facts may be summarized as follows.   Mother and father are the parents of E.M., born in April 2011, K.M, born in April 2012, and C.M., born in April 2013.  E.M. and K.M. were taken into custody by the Department for Children and Families in June 2012, when K.M., then three months old, was discovered to have multiple fractured ribs and was severely malnourished.  Both children were placed in foster care.  The parents stipulated to an adjudication of CHINS, and a disposition plan was adopted with concurrent goals of reunification and adoption.  Both parents subsequently pled guilty to a charge of child cruelty and received deferred sentences and probation.

When C.M. was born in April 2013, she was immediately taken into DCF custody based on the parents' continued struggles with meeting the case plan goals and concerns about the children's safety.  The parents again stipulated to an adjudication of CHINS, and all three children were placed with a foster family in August 2013, where they have since remained. The disposition plan for all three children continued to define concurrent goals of reunification and adoption.

In December 2014, the State filed petitions to terminate parental rights, and the court held an evidentiary hearing over the course of several days in May and August 2015. Witnesses included DCF social workers, several mental health experts who had evaluated the children and parents together, both parents, and the children's foster mother.

The court issued a written ruling in August 2015. The court found that father currently lived with his grandfather, had struggled to maintain employment, had failed to engage in any counseling as called for in the case plans, and could not as a practical matter have the children live with him. Mother had endured a very difficult childhood in which she had been subjected to physical and sexual abuse and had lived in various homes and shelters. She was seventeen when E.M. was born, and father was twenty. Based on the forensic evaluations and testimony, the court found that volatility and anger management presented a major issue for mother and a significant obstacle to her ability to safely parent the children; that she had nevertheless discontinued counseling for a lengthy period of time; and that this had resulted in a decrease in the number and length of visits with the children. Based on the testimony and evaluations, the trial court found that mother had made some progress in her parenting skills, while father's progress was minimal, but that neither had progressed to the point where they could "meet even the children's basic needs."

Based on these findings, the court concluded that both parents' progress toward reunification had stagnated. With respect to the children's best interests, the court concluded that neither was in a position to resume parental responsibilities within a reasonable period of time, particularly in view of the children's young ages and need for permanency. While the court found that the parents had demonstrated love for the children, it noted that their visits had been limited and concluded that they had not played "a particularly constructive role" in their lives. When they came into custody, the oldest child, K.M., had exhibited "parentified" behavior while still only two years old, had attachment problems and food issues. K.M. had fractured ribs, was malnourished, and also had attachment and food issues. They had since progressed in the care of their foster parents, where they had lived along with C.M. for two years, had developed strong attachments, and were well adjusted. The court thus concluded that a termination of parental rights was in the best interests of the children. These separate appeals followed.

Father contends that a "key factor" underlying the court's conclusions that his ability to parent the child had stagnated, and that termination of parental rights was in the children's best interests, was based on a circumstance beyond his control, specifically the decision by DCF to limit parental visits based on mother's problems with anger management and emotional volatility.[*] The argument is unpersuasive. The number of parental visits each week with the children was not a significant factor in the court's decision, which was based principally on both parents' failure to engage in the services and counseling necessary to acquire the insight, judgment, and emotional health necessary to safely and adequately parent the children. See In re D.D., 2013 VT 79, ¶¶ 34-35, 194 Vt. 508 (noting that, in juvenile proceedings, even unsupported findings will not result in reversal where remainder of findings support decision). Accordingly, we find no basis to reverse the judgment.

---

[*] Father's brief asserts in this regard as follows: "[T]he court's conclusions whether it was in the children's best interest to have their father's parental rights terminated or that there was stagnation in father's ability to parent was not supported by the evidence where father's shortcomings, if any, were caused largely by factors beyond father's control." Mother's brief indicates that she "joins in" this argument.

2

Father also argues that the court gave "great weight" to the children's attachment to their foster family and implies that the court improperly terminated parental rights because the children would be better off in another home. See In re E.B., 158 Vt. 8, 12 (1992) (observing that parental rights should not be terminated "simply because a child might be better off in another home"). Again, the court's decision was not predicated on such a finding; the court properly analyzed the children's relationship with their foster parents and adjustment to their foster home, as specifically required by statute under 33 V.S.A. § 5114(a)(1) and (a)(2), and found that they had developed strong attachments, but we find nothing to suggest that the court's decision to terminate parental rights was based simply on a finding that they would be better off with their foster family than with their parents.

Mother argues in summary fashion that the evidence was insufficient to support either the court's finding of stagnation or its conclusion that termination of parental rights was in the best interests of the children because the court noted that she had made "considerably more" progress than father and one of the mental health experts opined that reunification with mother might be considered after six months if mother engaged in additional services. The court reasonably concluded, however, that some progress after three years of DCF intervention was insufficient, and that the children's needs for permanence and stability were immediate, and could not be deferred for six months or longer. See In re C.L., 2005 VT 34, ¶ 17, 178 Vt. 558 (mem.) (reaffirming principle that parent's ability to resume parental responsibilities must be "measured from the perspective of the child's needs"); In re M.M., 159 Vt. 517, 522 (1993) (upholding finding that mother's progress toward reunification had stagnated, despite "some improvement," where it was insufficient and her ability to independently parent the child was months away). Accordingly, we find no merit to the claim.

Mother additionally contends that the court erred in concluding that the parents do not play a particularly constructive role in the children's lives, asserting that the court improperly focused on "quantity" rather than quality in its observation that their contact with the children had been reduced to weekly visits. As noted, however, the court's decision was not based on this factor, but on the overall substantial evidence that both parents had failed to develop the insight, judgment, maturity and stability "necessary to be able to provide parenting to their children at this time or in the near future." Accordingly, we find no error.

Mother also contends the court failed to properly assess and make findings concerning the children's attachment to the parents, citing our observation that "in some cases a loving parental bond will override other factors in determining whether termination of parental rights is the appropriate remedy." In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583 (mem.). The court did, in fact, find that both parents love their children and recognized that they had demonstrated this in their interactions with them. While there are no specific findings concerning the nature of the children's attachment to the parents, the court observed that all three children had spent either the bulk or, in the case of C.M., the entirety of their young lives in foster care, that their need for permanency was crucial and immediate, and that neither parent could meet this need within a reasonable time. See In re J.S., 168 Vt. 572, 574 (1998) (mem.) (holding that trial court properly considered children's "tender age" and particular needs in determining whether

parent could resume parental responsibilities within reasonable time). These findings were sufficient to support the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice